ERNEST B. MAY *v.* CROMPTON-ARKANSAS MILLS, INC. AND LIBERTY MUTUAL INSURANCE COMPANY

5-6163 · 490 S.W. 2d 794

Opinion delivered February 26, 1973

*Alonzo D. Camp,* for appellant.

*Riddick Riffel,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant contends that the judgment of the circuit court affirming the denial of compensation to him by the Workmen's Compensation Commission should be reversed because there was no substantial evidence to support the commission's decision. That decision was based upon a finding that the claimant did not suffer any injury to his left leg out of and in the course of his employment.

Appellant May claims that he suffered a compensable injury on the night of October 25, 1968, while working as an oiler at the Crompton-Arkansas Mills, Inc., plant at Morrilton. He testified that he slipped on a polished concrete floor and his left shin struck a metal brace underneath a weaving loom, resulting in a disabling injury at the exact site of an old compound fracture of the mid-portion of his left tibia and fibula which had resulted in a poor union and left him with a limp.

May testified that this injury occurred about 10 minutes before midnight, when a shift change was to take place. May stated that for this reason no one was in the vicinity at the time of the injury, because everyone who might have been there was in the "break" room preparing to leave, and the new shift workers had not entered the area. Furthermore, according to May, the large room where the incident occurred was filled with many waist-high looms, all of which were in operation. Thus, he said, one outside the immediate area could not have seen or heard anything to cause him to be aware of the injury. May testified that he managed to overtake a fellow worker

named Reuben Jones to whom he related the details of the occurrence. May went to the emergency room of a hospital the next day where an antibiotic and an anti-pain remedy were prescribed by the attending physician. Appellant returned to his home, but was later admitted to the hospital, where he remained for more than a week. Sometime during this interval, appellant's wife called the superintendent (or personnel manager) at the plant and advised him that May had slipped at the plant and bumped his shin. After leaving the hospital, May went to the plant office, where Ansel Swaim, the personnel manager, after discussing the injury and compensation with May, helped him to prepare a claim for benefits under a group policy carried by appellee for the benefit of its employees, resulting in the payment of benefits to May. Eventually, May's left leg was amputated below the knee because of an uncontrollable infection at the old injury site.

While it is true that the evidence might have supported a contrary finding, the burden of proving that his injury arose in the course of his employment was upon appellant. *Wilson* v. *United Auto Workers International Union,* 246 Ark. 1158, 441 S.W. 2d 475. This being the case, we are unable to say that there was no substantial evidence to support the commission's findings, because there was testimony tending to negate May's testimony and that of his wife. The commission might well have found from this contradictory evidence that May was not injured at the time he claimed to have been and might have also rejected his testimony for lack of credibility. Not only must we accept that view of the facts most favorable to the commission's findings, we are bound by the commission's determination of the extent to which testimony is given credit and must leave the drawing of inferences from the facts and circumstances to the commission. *Wilson* v. *United Auto Workers International Union,* supra.

May admittedly did not report his injury to any of the company's supervisory personnel on the night it occurred, even though he testified that James Wells, his foreman, was in the plant, and others testified that they were also present. May stated that his fellow employee Reuben Jones had promised to testify for him, but had backed

out. No effort was ever made by appellant to compel the testimony of Jones, in spite of the fact that his whereabouts seemed to have been known to May. The claimant admitted that he had been suffering pain from the old injury prior to the time of the alleged incident at the plant, and was carrying "pain pills" which he took when the leg hurt. May gave no history of the injury at the plant to his treating orthopedic surgeon. The group policy under which May made claim after his first stay in a hospital covered only non-job-related injuries. Swaim testified that he was not at the plant on Saturday, October 26, 1968, when May's wife said she called him and reported the injury. He also testified that when May came to his office after the first hospitalization, May did state that he had bumped his leg some time previously, but could not state that this caused his trouble. Swaim related that May stated this trouble had flared up on him from time to time and had been controlled by shots administered by Dr. Henry Mobley. Swaim also testified that May did not then state the time, place or circumstances of this alleged injury.

Not only Swaim, but Wells, Leonard Dixon (overseer of the weaving department) and several weavers and loom fixers (some of whom were no longer employed by appellee) gave testimony from which a fact finder would have been justified in concluding that it was highly improbable that no one would have been in the area where May claimed to have bumped his leg at the time May said that he did and that the area was clearly visible from the "break" room. Some of these witnesses said that because of the imminent shift change some 75 to 80 people would have been in the vicinity. While it was conceded that employees such as oilers and fixers might leave the job a few minutes early, the unlikelihood of weavers not being present just before the shift ended was shown by testimony that each of them was paid on the basis of recorded production, the recording of which could be terminated by the turning of a "pick lock" by an oncoming shift worker. Wells did not see how May could have been injured in the manner he claimed to have been because an intervening beam roll should have prevented his leg from striking the bar or "beam lock." Wells said that he was in the area at the time May asserted that

the injury occurred. It also appears that the claim was first filed about 1½ years after the alleged occurrence. When it was filed, the date of the injury was stated as October 28, 1968.

Appellant classifies this testimony on behalf of the employer as "negative" evidence and says that it cannot afford substantial support to the commission's findings. It appears to us that the drawing of an inference that May was not injured on the job because of the circumstances shown by these witnesses was permissible if full credibility was given to their testimony. Even if this were not so, this evidence could be taken to cast enough doubt upon the credibility of the claimant and his wife that the question ultimately was one of credibility, a matter lying exclusively within the province of the commission, and it was not bound to accept the claimant's testimony at face value. *Kivett* v. *Redmond*, 234 Ark. 855, 355 S.W. 2d 172. Consequently, we cannot say that the circuit court erred in affirming the commission.

Accordingly, the judgment is affirmed.