Helen WADE *v.* MR. C. CAVENAUGH'S and Cigna Insurance Company

88-245                                            768 S.W.2d 521

Supreme Court of Arkansas
Opinion delivered April 10, 1989

*Riffel, King & Smith*, by: *Kirby Riffel*, for appellant.

*Friday, Eldredge & Clark*, by: *Elizabeth J. Robben*, for appellees.

ROBERT H. DUDLEY, Justice. At the initial hearing in this workers' compensation case the Administrative Law Judge denied the appellant's entitlement to additional benefits. The Administrative Law Judge's order was affirmed by the full Commission. The Court of Appeals remanded the case to the Commission. *See Wade* v. *Mr. C. Cavenaugh's and Cigna Insurance Company*, 25 Ark. App. 237, 756 S.W.2d 923 (1988).

We granted a petition for review and now affirm the order of the Workers' Compensation Commission.

## I. Facts

On October 15, 1985, the appellant, Helen Wade, was working the night shift as a cashier in a convenience store located in Black Rock. At about 4:00 a.m. the store was robbed, and one of the robbers struck the appellant on the left side of the face, momentarily knocking her unconscious. The police investigated the robbery, and she resumed her work. After her shift was finished a friend drove her to the emergency room of the hospital in nearby Walnut Ridge where a physician x-rayed her jaw. Later, a dentist, James Phillips, treated her for pain and inability to open her mouth. On October 21, he recommended she return to work. She was only able to work for two hours and returned to Dr. Phillips and complained of a loss of vision. He referred her to Dr. Joe Stainton, an ophthalmologist, but she was not happy with his treatment. Phillips then referred her to another ophthalmologist, Dr. Bobby McKee, of Jonesboro.

The claimant worked from October 23, 1985, until November 10, 1985, when she was fired. There was testimony that her termination was the result of three cash shortages. The record also contains testimony of a store bookkeeper who stated that the claimant was one of several employees who had cash shortages, and at least one of her shortages could be explained as a bookkeeping error.

The claimant then went to Dr. Steven Flannigan, Chairman of the Department of Neurosurgery at the University of Arkansas Medical School who, in turn, referred her to a neuro-ophthalmologist, Dr. Walter Jay. She told Dr. Jay that her visual acuity diminished immediately after she was struck by the robber. Dr. Jay initially could not make any objective findings, so he hospitalized her for tests. After thorough testing he found there was no objective etiology for her visual loss. It was his opinion that the visual loss was psychological and he referred her to Dr. Gary Souheaver, a clinical neuro-psychologist who administered a Minnesota Multiphasic Personality Inventory and concluded that the most that could be said about her MMPI is that it would be associated with a high probability of alcohol or drug abuse, or both. Dr. Jay then referred the appellant to a psychoanalyst in

Jonesboro, which was closer to her home. That psychoanalyst, Dr. Edwin Price, stated that the appellant did not relay a past history of blurred vision, or that she was refused unemployment benefits because of making a material misrepresentation on her application for unemployment. He attributed all of her emotional problems to the robbery and the blow to her face suffered on October 12, 1985.

However, the record reflects that a Memphis ophthalmologist had seen the appellant on June 17, 1983, almost twenty-eight months before the October 1985 robbery. At that time she complained of headaches, pain around the left eye, and blurred vision in the left eye. In 1983 and 1984, he saw her seven times and hospitalized her twice for the same complaints. He also saw her after the robbery and was unable to connect any visual problem to her having been struck in the face during the robbery. In addition, he did not see any difference in her emotional state before and after the robbery.

Appellee paid for appellant's medical treatment until March 1986, including her initial evaluation by Dr. Price, but refused to pay for further treatment, controverting appellant's claim for additional temporary total disability benefits and medical benefits. After two hearings, an Administrative Law Judge denied appellant's request for additional benefits. The Commission affirmed the Law Judge's decision. The Commission found that appellant had failed to prove a causal connection between the compensable injury received during the robbery and the disability and additional benefits appellant claimed after her employment was terminated. Although the Commission found that appellant was upset by the robbery, it found that her emotional reaction did not rise to the level of a psychiatric problem or the level of disability within the meaning of Ark. Code Ann. § 11-9-102(5) (1987) [formerly Ark. Stat. Ann. § 81-1302(e) (Repl. 1976)].

The claimant's five points of appeal can be reduced to three issues: (1) whether the Commission erred by not extending the benefit of doubt to the claimant on all factual determinations; (2) whether the Commission erred in finding that the claimant's pre-existing eye condition was not aggravated by the robbery; and (3) whether the Commission's decision denying additional benefits was supported by substantial evidence.

## II. Benefit of Doubt

The appellant first argues that the Commission erred by not giving her the benefit of the doubt on all factual questions. She bases her argument on our case of *Brower Mfg. Co.* v. *Willis*, 252 Ark. 755, 480 S.W.2d 950 (1972). It is true that in *Brower*, this court held that the claimant was entitled to the benefit of the doubt in every factual determination. However, this is no longer the law. Act 10 of 1986, Second Extraordinary Session, codified as Ark. Code Ann. § 11-9-704(c)(4) (1987) changed the existing law to provide that in determining whether a party has met its burden of proof, Administrative Law Judges and the Commission shall weigh the evidence impartially and without giving the benefit of the doubt to any party. In *Fowler* v. *McHenry*, 22 Ark. App. 196, 737 S.W.2d 663 (1987), the Court of Appeals noted this change in the law and determined that it should be applied retroactively to any case heard by the Administrative Law Judges or the Commission after the effective date of the act in June of 1986, regardless of the date of the claimant's injury. *See also Marrable* v. *Southern LP Gas, Inc.*, 25 Ark. App. 1, 751 S.W.2d 15 (1988). Thus, even though appellant's injury occurred before the effective date of the act, the Commission correctly refused to give the appellant the benefit of the doubt in making factual determinations, since it reviewed the case well after the effective date of the act.

## III. Pre-existing Injury

The appellant argues that she should not be denied additional workers' compensation benefits merely because of evidence that she had diminished visual acuity which pre-existed her injury. Appellant correctly states the rule that when a pre-existing injury is aggravated by a later compensable injury, compensation is in order. As the Court of Appeals said in *Henson* v. *Club Products*, 22 Ark. App. 136, 736 S.W.2d 290 (1987), the employer takes the employee as he finds him. The Commission did not dispute this point; rather, it merely stated that it did not find that the robbery had aggravated the appellant's pre-existing eye condition.

## IV. Substantial Evidence

■ An appellate court must affirm the Commission's decision if it is supported by substantial evidence. Substantial evidence exists if reasonable minds could have reached the same conclusion. Here, there is substantial evidence to support the Commission's conclusion.

■ Dr. Richard Drewry, Jr., who had treated appellant for her eye condition in 1983 and 1984, could find no connection between appellant's eye problem and appellant's being struck in the face during the robbery. He testified that there was no change in the December 1985 examination of appellant from his earlier examinations of her in 1983 and 1984. Further, Dr. Walter Jay, who specializes in neuro-ophthalmology, testified that, in his opinion, appellant suffered from psychological visual loss in 1983 and 1984, and that the loss pre-existed the October 12, 1985, injury. Thus, there was substantial evidence to support the Commission's finding that appellant's pre-existing eye condition was not aggravated by the robbery injury.

■ The appellant contends that the Commission erroneously based its decision on facts outside the record when it relied upon the observations made by the Administrative Law Judge at the initial hearing. The Court of Appeals may have accepted such an argument when it wrote, "[t]he Commission's finding about the claimant's physical reactions during her testimony before the law judge is not a matter that the Commission can see or judge for itself." We wholly reject the argument and expressly hold that the Commission is entitled to rely on the Administrative Law Judge's observations and comments made about the claimant's demeanor, conduct, appearance or reaction at the hearing. Here, the Administrative Law Judge, in his opinion wrote:

> Doctor Edwin Price, in his deposition, as noted above, does not feel, from his contact and treatment of the claimant, that the Employment Security Division's rulings and claimant's contact with same were significant. Having had benefit of observing the claimant during two (2) hearings, I note and the transcripts of same reflects, whenever this area was broached, either on questioning of the claimant or other witnesses, claimant appeared to become distraught, upset, and began crying, seemingly uncontrollably.

The transcript does reflect these emotional outbursts. The Commission relied on the above quoted statement and the transcript and wrote:

> The preponderance of the evidence in the record is that even if Wade is too traumatized to work and in need of psychotherapy, the emotional problems stem not from the robbery but from the firing and accusations regarding the alleged cash shortages and the denial of benefits by the Employment Security Division. Not only do these other matters figure much more prominently in Dr. Price's reports and testimony, but we find it significant that Wade became distraught and began crying during the hearing before the Administrative Law Judge when questioned about the ESD problems but not while describing the robbery. In the absence of a showing of incapacity to work or other[wise] function normally and of a definite causal connection between the emotional stress and the robbery, we are unable to award either disability or psychiatric benefits.

The Commission was entitled to rely upon the Law Judge's observations and the transcript.

The appellant next argues, alternatively, that even if the Commission can consider the Administrative Law Judge's observations, it did so in error here, because the appellant cried once while first discussing the robbery, and therefore, appellant argues, the observation is in error. The short answer is that the first incident was not as intense as the later ones, and it is clear from the record that the frequency of becoming upset and crying increased significantly when the appellant was testifying about being fired and being denied unemployment benefits.

█ The appellant argues that the Commission also relied on facts outside the record when it stated that Dr. Price found that the events surrounding the appellant's firing and denial of unemployment benefits were a prominent cause of her emotional problems. In its opinion, the Commission specifically stated:

> While Dr. Price opined that her emotional stress was serious enough to be disabling and that it was causally connected to the robbery, his opinion is necessarily based

upon the history and description of symptoms given him by the patient. A physician's opinion is not conclusive or binding on the commission. It merely constitutes competent evidence to be considered along with all other evidence. (Citations omitted.) . . . Not only do these other matters [the firing, accusations, and denial of benefits] figure much more prominently in Dr. Price's reports and testimony, but we find it significant that Wade became distraught. . . .

Nowhere in its opinion does the Commission state that Dr. Price found the ESD matters to be more prominent in relation to appellant's problems than the robbery itself. Indeed, the opinion clearly recognizes Dr. Price's conclusion that the appellant's problems were causally connected to the robbery. The Commission simply decided not to give much weight to that opinion in light of all the other evidence. This was a proper thing for the Commission to do, since the weight and credibility of a witness' testimony are exclusively within the province of the Commission. *See Price* v. *Servisoft Water Co.*, 256 Ark. 702, 510 S.W.2d 293 (1974); *May* v. *Crompton-Ark. Mills, Inc.*, 253 Ark. 1080, 490 S.W.2d 794 (1973).

Appellant's final contention about the Commission basing its decision on facts not in the record relates to the Commission's finding that appellant had returned to the same duties and salary after her period of disability. Specifically, the Commission stated:

Wade was able to return to work until she was discharged for alleged cash shortages. There is a presumption that one returning to the same job with the same duties and salary has suffered no loss of earning capacity. *Bragg* v. *Evans-St. Clair Inc.*, 15 Ark. App. 53, 688 S.W.2d 956 (1985). Although she says she is afraid to drive a vehicle, she drove herself to work. She repeatedly told the manager that she was "fine." Although she expresses fear that the robbers might return, she refused an offered transfer to the day shift. She also told the Employment Security Division that she was ready, willing, and able to work. She gave no testimony that she had been unable to find or hold employment due to physical or mental injuries stemming from the robbery . . . . In the absence of a showing of

incapacity to work or other[wise] function normally . . . we are unable to award either disability or psychiatric benefits.

The appellant argues that she testified that she was not fit to return to work, and that she was not able to perform her normal duties. She points out that she only worked 16 to 18 hours per week after the robbery, while before the robbery she never worked less than 32 hours per week. However, the evidence indicated that the decrease in appellant's working hours was more attributable to her employer's suspicions about her being responsible for the robbery and to the cash shortages she had been having, than to any inability to work on her part. The appellant also contends that the Commission should not have relied on the testimony of Marge Starling in concluding that she was fit to return to work. She argues that Starling's testimony was discredited by the fact that appellant's hours were substantially reduced after her return. Once again, the credibility of the witnesses is entirely up to the Commission. They did not have to believe appellant over the other evidence that she was, in fact, ready and able to return to work on October 21, 1985.

Finally, the appellant argues that the Commission did not give sufficient weight to Dr. Price's testimony. The appellant argues that Dr. Price was the only person to give an opinion as to the cause of appellant's problems; therefore, she contends that the Commission was bound to accept his opinion on the matter. First, it is not true that no other witness gave an opinion as to the cause of appellant's problems. Dr. Richard Drewry, who had treated the appellant for her pre-existing eye condition prior to the robbery, testified that appellant's emotional condition seemed to be exactly the same after the robbery as it was before the robbery. As the Administrative Law Judge noted in his opinion, Dr. Drewry was unable to connect appellant's most recent injury to her continuing eye problem. Dr. Walter Jay, a neuro-ophthalmologist, who had examined appellant after her injury, concluded that appellant had sustained a psychological visual loss and that such a loss pre-existed the robbery injury. Even Dr. Price's opinion is not unequivocal. While he does state that in his opinion the appellant's problems are causally connected to the robbery, his testimony and reports reveal that a large factor in the appellant's problems were the events surrounding her being fired

and being accused of cash shortages, as well as the denial of unemployment benefits and the continuing litigation with regard to workers' compensation benefits. Thus, there was testimony that conflicted with that of Dr. Price, and it was for the Commission to decide who to believe.

■ Even if Dr. Price had given the only medical opinion as to causation, the Commission would not be unconditionally bound by his opinion. As we stated in *Wilson & Co. v. Christman*, 244 Ark. 132, 424 S.W.2d 863 (1968), the Commission has never been limited to medical evidence only in arriving at its decision as to the amount or extent of a claimant's injury. Rather, we wrote that the Commission should consider all competent evidence, including medical, as well as lay testimony, and the testimony of the claimant himself. Further, the Court of Appeals has stated several times recently that while medical opinions are admissible and frequently helpful in workers' compensation cases, they are not conclusive. *Henson v. Club Products*, 22 Ark. App. 136, 736 S.W.2d 290 (1987); *Boyd v. General Industries*, 22 Ark. App. 103, 733 S.W.2d 750 (1987).

The holding of the Commission is affirmed.

GLAZE, J., concurs.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I am not prepared to say that the appellant is or is not disabled from work as a result of the robbery or as a result of the firing. Nor do I believe that this court (or, for that matter, the Court of Appeals or the Commission) is able to render a just decision regarding appellant's claim due to the completely erroneous statement of fact found in the Commission's opinion. The Commission found it *"significant* that Wade became distraught and began crying during the hearing before the Administrative Law Judge when questioned about the ESD problems *but not while describing the robbery."* (Emphasis added.) The record reflects otherwise.

I agree with the disposition made by the Court of Appeals. See *Wade v. Mr. C. Cavenaugh's and Cigna Insurance Co.*, 25 Ark. App. 237, 756 S.W.2d 923 (1988). The Court of Appeals correctly recognized that the statement of the facts by the Administrative Law Judge was incomplete, and that the sum-

mary of the record as considered by the Commission was inaccurate and downright misleading. Although there is no reason to suspect that it was intended to be incomplete and inaccurate, it nevertheless came out that way.

The crux of the matter is that the Administrative Law Judge did not listen to all of the evidence, and he did observe the appellant cry when her termination was mentioned. However, the full record discloses that she also cried on several other occasions, including those times when the robbery was mentioned.

This court's standard of review on appeal is whether the decision of the Commission is supported by substantial evidence. *Henson* v. *Club Products*, 22 Ark. App. 136, 736 S.W.2d 290 (1987); and *Boyd* v. *General Industries*, 22 Ark. App. 103, 733 S.W.2d 750 (1987). This court does not reverse a decision of the Commission unless we are convinced that fair minded persons *with the same facts before them* could not have arrived at the conclusion reached. *Henson*, supra; and *Boyd*, supra. There was substantial evidence to support the Commission's finding, but the Commission's decision appears to have been substantially based on a completely erroneous interpretation of the record — i.e., that the appellant did not become visibly upset when the robbery was being discussed. The Commission was consequently handicapped and has not yet had an opportunity to rule on the case with all of the relevant evidence before it.

The evidence does not compel a decision one way or the other as to whether the appellant's emotional problems stemmed from the robbery or from the firing or from both. However, it is clear that the Commission did not have a full picture before it in making its decision. In fairness to the appellant and the Commission, the case should be remanded as directed by the Court of Appeals. The Commission is entitled to rely on the findings of the Administrative Law Judge, but when the decision of the Commission is founded upon a completely erroneous interpretation of the record, the decision should not be allowed to stand.

The majority opinion of this court recognized that the statement of the facts in the Commission's decision was in error. This court then dismisses this significant error by stating that "[t]he short answer is that the first incident [when the robbery was discussed] was not as intense as the later ones." The majority

374

simply does not address the argument that the decision of the Commission apparently was based on a completely erroneous statement of fact.

Fair minded men with *different* facts before them can and do arrive at different conclusions. Since the Commission did not have an opportunity to make a determination based upon all of the evidence, I would affirm the action of the Court of Appeals in remanding the case to the Commission for consideration on its merits.