PARRISH ESSO SERVICE CENTER *v.* ADAMS.

5-3170                                                   374 S. W. 2d 468

Opinion delivered January 27, 1964.

*Rieves & Smith,* for appellee.

*R. Dale Hopper* and *Everard Weisburd,* for appellee.

CARLETON HARRIS, Chief Justice. This litigation involves two questions of first impression. Thurman L. Adams, employed as a service station attendant for Parrish Esso Service Center at West Memphis, was injured in the early hours of May 6, 1960, admittedly in the course of his employment. The injury occurred when a gust of wind, on the service station lot, lifted appellee into the air, carried him approximately seventy-five feet, and dropped him on the concrete apron. The Commission held that the claimant sustained an accidental injury which arose out of and in the course of his employment, but held in abeyance for future determination the entering of an award because of inconclusive proof relative to claimant's temporary total, temporary partial, and permanent partial disability. The findings of

the Commission were appealed to the Crittenden County Circuit Court, and that court affirmed the order entered by the Commission. From the judgment of the Circuit Court comes this appeal.

Two questions alone are involved in the litigation, and appellants rely on two points for reversal of the judgment as follows:

I

"Appellee's claim was not filed within the time prescribed by law and was, therefore, barred by the statute of limitations.

II

"Appellee's injury did not arise out of and in the course of his employment but instead was caused solely by an act of God, which was unrelated to his employment."

I

Ark. Stat. Ann. § 81-1318 (a) (1) (Repl. 1960) provides:

"A claim for compensation for disability on account of an injury (other than a occupational disease and occupational infection) shall be barred unless filed with the Commission within two (2) years from the date of the accident."

The following stipulation was entered into by the parties:

"1. That R. Dale Hopper, one of claimant's attorneys would testify at the hearing on this claim that between the hours of Five (5:00) p.m. and Five Thirty (5:30) p.m. Friday, May 4, 1962, he deposited in the U. S. Mails at the Post Office, of West Memphis, Arkansas, a letter constituting a claim for Workmen's Compensation Benefits in behalf of claimant, said letter being properly addressed to the Workmen's Compensation Commission at Little Rock, Arkansas, and having proper postage affixed.

"2. That Donald Hall, Postmaster of the West Memphis Post Office would testify at the hearing that mail addressed to a Little Rock, Arkansas, address and deposited in the West Memphis Post Office with proper postage affixed thereon between the hours of Five (5:00) p.m. and Five Thirty (5:30) p.m. on Friday, May 4, 1962, would in the ordinary course of mails, reach the Little Rock Post Office in time for delivery the following morning Saturday, May 5, 1962.

"3. That said claim was not actually received by the Workmen's Compensation until Monday, May 7, 1962."

Further,

"It is stipulated and agreed by and between counsel for each party herein that the Arkansas Workmen's Compensation Commission's office, Little Rock, Arkansas, is always closed for business on Saturday and Sunday of each week of the year and that the same was closed on Saturday and Sunday, May 5 and May 6, 1962."

Counsel for both sides cite several Arkansas decisions on the question of limitation, but as the Commission pointed out, most of these decisions concern interpretations of law in contract and in tort. In fact, only one Arkansas case cited,[1] relative to limitations, is a Compensation case, and in that case, the claimant did not file his claim for compensation for more than a year after the time provided by statute. The Commission, in holding that Sunday was not a day to be counted, relied in large measure on the New Jersey case of *Potter v. Brady Transfer and Storage Company*, 91 A. 2d 111. In that case the claimant filed his claim on a Monday, whereas the time period under the statute of limitations expired on the preceding day, Sunday. The court, in holding that the claim had been filed in time, did so on the basis that Sunday was, by law, a legal holiday, and the Sunday statute and limitations statute were therefore in conflict. The enactment of the statute

---

[1] 214 Ark. 416, 216 S. W. 2d 796.

declaring Sunday a legal holiday preceded the passage of the limitations statute, and the court said: "Whenever the Legislature fixes a time period, it should be assumed that it is enacting the law in the light of those other statutes."

We need not discuss our approval or disapproval of the view held by the Workmen's Compensation Commission (in excluding Sunday in computing the time limit); rather our opinion that the claim was filed in time is based on the fact that such claim would have arrived at the Commission office for filing on Saturday, except for the fact that the office was closed on that day. In the case of *Mary Gail Coal Co.* v. *Rhodes*, 284 S. W. 2d 97, the Kentucky Court of Appeals passed upon this same question, stating that there was, under Kentucky law, no legal basis for declaring Saturday a holiday.

"Aside from this, although Saturday is observed as a day of rest by the state offices in Frankfort, one may certainly assume it is a common understanding of the public at large that Saturday is not a recognized legal holiday.

"As is customary, appellee's attorney chose the United States mail as the medium to deliver the application for compensation to the Board. Under normal circumstances this instrument would have arrived on time and have been seasonably filed, but instructions from the Board itself intervened and caused the lapse of the limitation period. As has been mentioned, appellee had no notice the postmaster had been instructed not to deliver registered and special delivery mail to the Board on Saturday and we believe a claimant, in asserting an alleged legitimate claim for compensation, should not be held subject to the adverse consequences of an expedient postal delivery arrangement of which he had no knowledge. January 15, 1954, did not fall on Sunday or a legal holiday, and the application sent by mail could have been delivered on that date in the usual course. What could have ordinarily been done, should

be considered done, and the application should have been marked 'filed on January 16, 1954'.''

Likewise, Saturday is not a legal holiday in this state, and we agree with the language of the Kentucky court that ''one may certainly assume it is a common understanding of the public at large that Saturday is not a recognized legal holiday.'' Appellants place great emphasis upon the meaning of the word ''file,'' contending that an instrument or claim cannot be considered filed until it is received by the proper officer, and that the date of mailing a notice or claim is actually immaterial. We consider appellants' interpretation as highly technical, and we take occasion to point out the language used by this court (quoting a Mississippi case) in *S. E. Prince Poultry Company* v. *Stevens,* 235 Ark., 1034, 1038, 363 S. W. 2d 929, as being quite apropos to the case at bar.

'' 'These Compensation Acts are entitled to and have universally received a liberal construction from the courts. The humanitarian objects of such laws should not, in the administration thereof, be defeated by overemphasis on technicalities—by putting form above substance.' ''

To hold in accord with the position taken by appellants, could well result in working an unjust and undue hardship upon claimants in particular cases. For instance, some offices in the state and over the country close, not only on Christmas Day, but (dependent upon the date of Christmas) for several days thereafter. Should one be penalized because the instrument or claim would normally reach the proper officer on one of these days, but is not delivered because of the fact that the office is closed? For that matter, mail is sometimes delivered to the wrong office, particularly where several departments are housed in the same building, and is not re-delivered to the proper department for a day or two thereafter. Should a claimant lose all rights, because of such an occurrence over which he has no control? The answer is obvious, and we decline to hold that the claim was not filed in time.

## II

While appellants concede that appellee's injury arose during the course of his employment, they vigorously contend that the accident did not arise out of the employment, *i.e., because* of the employment, but that the injury sustained was the sole result of an act of God, unrelated to the employment itself. Counsel for both appellants, and appellee present excellent briefs, and it is pointed out that there is not a single reported case in the United States where an individual was injured solely by the forces of a tornado or windstorm as in the case at bar. Appellants quote the general rule as stated by Schneider in the "Workmen's Compensation Text," Volume 6 (Perm. Edition), Page 78.

"The general rule with respect to injuries and deaths due to tornadoes, hurricanes, and other forms of windstorms is, if an employee, by reason of his employment, is exposed to a risk of being injured by storm 'which is greater than the risk to which the public in that vicinity is subject, or if his employment necessarily accentuated the natural hazard from the storm, which increased hazard contributed to the injury,' it is an 'injury arising out of the employment, although unexpected and unusual.' The test has been said to be 'not whether the injury was caused by an act of God,' but 'whether the one injured was by his employment specially endangered by the act of God.' "

While most of the courts appear to accept this rule, the various jurisdictions have certainly reached different conclusions in applying the rule, and decisions from different states are frequently conflicting, in some instances where the facts are hardly distinguishable. Appellants insist, however, that in all of the cases, the injury complained of was not attributable *solely* to the elements (as here), but there were always other factors which, when connected with claimant's duties, contributed to the injury. For instance, in one case, a smoke stack crumpled and fell upon an individual; in another, a building loaded with cottonseed hulls collapsed and injured a workman, the load being the contributing fac-

tor in the building's inability to withstand the onslaught of the storm. Numerous other cases to the same effect are cited. On the other hand, as pointed out by appellee, some courts have not even required that the employees show that he was, because of his employment, exposed to a greater risk than the risk to which the general public in that vicinity was exposed. It has been sufficient in those cases that the employee merely establish that he was in the location where the injury occurred solely because of his employment.[2] It is not necessary that we pass on this contention raised by appellee, and we do not pass on it, inasmuch as the Commission's decision was based on the fact that Adams, because of performing his duties was, exposed to a more dangerous situation (as to the storm) than that of the general public in the vicinity, and we think there was substantial evidence to support that view.

Let us look to the circumstances surrounding the instant case. Adams testified that he was employed as night manager of the station, and at the time in question was the only person working on the shift which started at 9:00 o'clock in the evening and ended at 7:00 o'clock the next morning. Claimant stated that it was raining, with thunder and lightning, at the time he went to work, and the weather remained "fairly rough" until the early hours of the morning. Though it continued to rain, the wind died down considerably for about an hour and a half before the accident. Adams testified that the electricity at the station failed at about 3:30 A.M., due to lightning striking a transformer about a block east of the station. Adams then called the Police Department, and requested that the power company be contacted so that he could get his lights back on at the station. According to claimant, electricity controlled the gas pumps, lights, tire machine, battery charger, drink boxes and practically all facilities of the station. The witness

---

[2] An interesting article by Samuel B. Horowitz, entitled "Workmen's Compensation: Half Century of Judicial Developments," appears in 41 Neb. L. Rev. No. 1 (Dec. 1961 Ed.). In Section 3 of the article, "Acts of God, Positional and Local Risks," the author discusses the "increased risk" concept and the "actual risk" test wherein the sole question is whether the employment exposed the employee to the risk.

stated that he decided that, while it was not raining, he would go out and "fasten up and secure up" out on the front, so that if it started raining hard again, he could stay in the office until the lights were back on.

"I went out to the islands[3] and anchored everything and walked out to my price signs which was out against the highway and pushed one concrete block up on the legs of it that were used to keep or prevent the wind from blowing it over, as much as possible."

Adams was wearing a rain suit and overshoes, and was using a flashlight to find his way around. Claimant stated that as he was engaged in weighting down the price sign, he noticed the power company truck a short distance down the highway.[4]

"I was raising up and I said, 'Now I can tell him where those wires are down, to where I can get my lights back on that much quicker, because he couldn't see the light wires down. '* * * Just as I raised up and decided to tell him where the wires were at, I heard this storm.

* * * I had time to turn and go in the process of taking one step and that's the last I know of until I found myself on the concrete."

It developed that Adams had been blown about seventy-five feet, and the witness stated that he heard the wind, and then had a sensation of falling.[5]

The Commission, in finding that the claim was compensable, stated:

"The uncontradicted proof in this case is the claimant, in the performance of his duties for his employer, had left the service station building and had gone outside to secure everything before the weather worsened;

---

[3] The location of the gasoline pumps.

[4] At another point in his testimony, Adams stated that he saw the truck proceeding on the highway while sitting in the office and before he went outside.

[5] According to the witness, as a result of the storm, "there was one of the glasses broken out and the oil racks out there just blown all over everywhere, the price sign was blown down and as to the other damage, Sir, honestly I don't know."

and while in the performance of these duties, was injured by an act of God, a windstrom. * * *

"In our view, the claimant here sustained an accidental injury which arose out of and in the course of his employment. The fact that he left the safety of the service station to go outside in the performance of his duties, and was there performing such duties when he was injured, placed him at that moment in a more dangerous situation insofar as the "Act of God" was concerned than that to which the general public in that vicinity was subjected; for the general public was not required to go outside at such a time but could remain in places of safety."

We think there was substantial evidence to support the finding of the Commission. Certainly, there was a duty upon Adams, as an employee, to protect the property of his employer, and the protection that Adams was seeking to afford, could not have been done without leaving the building. The acts being performed were as much a part of his duties as though he had been waiting on a customer when the wind struck. There is absolutely no evidence that Adams was *not* engaged in the work that he testified to at the time the injury was sustained. It was within the province of the Commission to determine whether Adams' testimony was worthy of belief. The Commission decided that question in the affirmative, and we hold that the testimony of claimant constituted substantial evidence.

Affirmed.