Curtis Dewayne ADKINS *v.* TELEDYNE
EXPLORATION COMPANY & ARGONAUT
INSURANCE COMPANY

CA 82-191                                    652 S.W.2d 55

Court of Appeals of Arkansas
Opinion delivered June 15, 1983
[Rehearing denied July 6, 1983.*]

*Denver L. Thornton* and *James J. Calloway,* for
appellant.

*Shackleford, Shackleford & Phillips, P.A.,* for appel-
lees.

JAMES R. COOPER, Judge. This is a workers' compen-
sation case. The appellant was shot by a fellow employee,
causing serious injury. The administrative law judge and
the full Commission found that the appellant was not
entitled to coverage under the Workers' Compensation Act.
From that decision, comes this appeal.

*GLAZE, J., would grant rehearing.

The appellant and Mr. Calvin Spears were in the El Dorado, Arkansas area performing work for Teledyne Exploration Company, hereinafter referred to as Teledyne. They shared a motel room in El Dorado. Both were paid a *per diem* allowance for room and board by Teledyne. In the early morning hours of February 3, 1981, they were entertaining two women in the motel room. The room was arranged like an apartment, with a combination kitchen, living room, and sleeping area in the front, and a bedroom in the rear. The appellant went into the bedroom and found Mr. Spears and both women in the bedroom. One of the women was dressing, and when the appellant came into the room, she asked Mr. Spears if he was going to allow the appellant to look at her. Mr. Spears asked the appellant not to look at her, and then he drew a .22 pistol from under the bed. He pointed the gun at the appellant, and it discharged, striking the appellant in the stomach. There is no allegation that the shooting was intentional.

The administrative law judge found that the appellant had been on duty on February 2, 1981, and that he had checked at the bus station in El Dorado to determine whether certain equipment belonging to Teledyne had arrived. The administrative law judge found that, even if the motel room was assumed to be a part of the employer's premises, the appellant would still not be entitled to benefits. He found that the law in Arkansas prevented coverage for accidental injuries related to firearms, when the firearms were not being used in furtherance of the employer's business at the time of the injury. The full Commission adopted the administrative law judge's opinion.

In the case at bar, the administrative law judge cited *Southland Corporation* v. *Hester,* 253 Ark. 959, 490 S.W.2d 132 (1973), for the proposition that injuries sustained by an employee which are caused by the accidental discharge of a firearm are not compensable, unless the firearm was being used in connection with, or in furtherance of, the employer's business since such injuries do not arise out of the employment, though they may occur in the course of the employment. The administrative law judge held that the *Hester* case precluded recovery by the appellant.

The *Hester* case involved an employee who was found dead on the employer's premises. The employee's death was caused by a gunshot wound to the chest. The shooting was unexplained, but the Arkansas Supreme Court assumed for purposes of the opinion that the shooting was accidental, rather than self-inflicted. The Court was concerned with the existence of a causal connection between Hester's death and his employment.

The Court quoted from Schneider, Workmen's Compensation § 1567 (a) (1948), as follows:

> Injuries to workmen from the accidental discharge of guns, not handled or present in connection with or furtherance of the employer's business, cannot be said to be compensable accidents. They do not arise out of though they may occur in the course of the employment. . . .

The Court reversed and dismissed the case, stating:

> To say the least, Hester voluntarily created a dangerous situation having no direct connection with his duties as an employee and bearing no express or implied approval on the part of his employer. . . .

In *West Tree Service, Inc.* v. *Hopper*, 244 Ark. 348, 425 S.W.2d 300 (1968), the employee sustained an eye injury during his lunch hour, when a .22 rifle bullet exploded while he was shooting at tin cans with several other employees. The rifle was owned by the foreman, who removed it from the truck that the employees were using in performing their work. The foreman fired the rifle at a tin can and then allowed the other employees to fire the rifle. The rifle was not used in connection with the work being performed by the employees.

The Commission held that the accident did not arise out of the employment. The circuit court reversed the Commission, holding that the employee had been encouraged to engage in recreation, *i.e.*, the shooting of the rifle, and that such recreation during the rest period was bene-

ficial to the employer. The Arkansas Supreme Court stated that the firing of the rifle was not connected with the employer's business and that the injury did not arise out of the employment because there was substantial evidence to support the Commission's decision that the employee's firing of the rifle was a voluntary act on his part.

Both *Hester* and *Hopper* dealt with injuries to employees who either created the dangerous situation or who voluntarily joined in the dangerous activity. In the case at bar, the appellant neither created the dangerous situation, nor did he voluntarily join in any dangerous activity. He was accidentally shot by a fellow employee, arguably on the employer's premises, under circumstances which are factually distinguishable from the situations in *Hester* and *Hopper*. The decision in the case at bar is not controlled by *Hester*, and the Commission erred in so holding.

Since the administrative law judge and the Commission erred in holding that *Hester* was controlling, the case must be reversed and remanded to the Commission to determine whether the appellant's injury arose out of and in the course of his employment as those terms have been defined by prior Arkansas case law. *See J. & G. Cabinets* v. *Hennington,* 269 Ark. 789, 600 S.W.2d 916 (Ark. App. 1980).

The appellant urges this Court to find that his injury arose out of and in the course of his employment, based on an application of Professor Larson's "positional risk" theory. This theory holds that an injury arises out of the employment if it would not have occurred but for the fact that the conditions or obligations of the employment placed the claimant in the position where he was injured by some neutral force. "Neutral" means that the risk which caused the injury was neither personal to the claimant nor distinctly associated with the employment. *See* 1 A. Larson, The Law of Workmen's Compensation § 6.50 (1978).

It is not necessary for us to determine whether the "positional risk" theory is available in Arkansas.[1] The risk

---

[1] *Foster* v. *Johnson,* 264 Ark. 894, 576 S.W.2d 187 (1979), is the only Arkansas case which specifically refers to the "positional risk" theory.

which caused the appellant's injury was not a "neutral" risk.[2]

Reversed and remanded.

GLAZE, J., dissents.

_____

[2]Illustrative of the "neutral" risk cases are cases involving injuries caused by stray bullets, roving lunatics, and acts of God. A good example of a neutral risk is a windstorm, such as existed in *Parrish Esso Service Center* v. *Adams*, 237 Ark. 560, 374 S.W.2d 468 (1964). This case was decided based on an increased risk theory. The Arkansas Supreme Court did not mention "positional risk".