Ronald Dale KENDRICK *v.*
PEEL, EDDY, AND GIBBONS LAW FIRM, et al.

CA 89-520                                    795 S.W.2d 365

Court of Appeals of Arkansas
Division I
Opinion delivered September 19, 1990

30

*Young & Finley*, by: *James K. Young*, for appellant.

*Jones, Gilbreath, Jackson & Moll*, by: *Randolph C. Jackson*, for appellee.

MELVIN MAYFIELD, Judge. The appellant in this appeal from the Workers' Compensation Commission is the minor son of Kathy Kendrick, who was shot and killed at her employer's law office by Ronald Gene Simmons on December 28, 1987. It is contended that the child, who was four years old at the time of his

mother's death, is entitled to workers' compensation benefits based on the doctrine of positional risk. The Commission did not agree that the doctrine applied and held the evidence failed to establish that decedent's death arose out of and in the scope of her employment.

■ In *J. & G. Cabinets* v. *Hennington*, 269 Ark. 789, 600 S.W.2d 916 (Ark. App. 1980), this court said:

> A claimant before the Workers' Compensation Commission must prove that the injury sustained was the result of an accident arising out of and in the course of employment. The phrase "arising out of the employment" refers to the origin or cause of the accident and the phrase "in the course of the employment" refers to the time, place, and circumstances under which the injury occurred.

269 Ark. at 792-93, 600 S.W.2d at 918. The doctrine of positional risk relied upon by the appellant in the instant case is explained in 1 Larson, *The Law of Workmen's Compensation*, § 6.50 (3/90), as follows:

> An important and growing number of courts are accepting the full implications of the positional-risk test: An injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he was injured. . . . This theory supports compensation, for example, in cases of stray bullets, roving lunatics, and other situations in which the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the particular time when he was injured by some neutral force, meaning by "neutral" neither personal to the claimant nor distinctly associated with the employment. [Emphasis in Larson.]

Although the positional risk doctrine has not yet been applied in Arkansas to sustain an award of compensation, our cases have indicated that the doctrine would be applied in a proper case. In *Pigg* v. *Auto Shack*, 27 Ark. App. 42, 766 S.W.2d 36 (1989), we cited the case of *Parrish Esso Service Center* v.

*Adams*, 237 Ark. 560, 374 S.W.2d 468 (1964), where compensation was awarded to a claimant who was injured at work by a gust of wind which "lifted appellee into the air, carried him approximately seventy-five feet, and dropped him on the concrete apron." We said in *Pigg* that while the words "positional risk" were not used in *Parrish*, that case represents the type of fact situation where the positional risk doctrine arises. However, in *Pigg*, we relied upon 1 Larson, *Workmen's Compensation Law* § 11.21 (now 1 Larson, *The Law of Workmen's Compensation*, § 11.21(c)(3/90)) to hold that the positional risk doctrine applies "only when the risk is neutral," and we agreed with Larson that neutral means "that the risk which caused the injury was neither personal to the claimant nor distinctly associated with the employment." 27 Ark. App. at 45, 766 S.W.2d at 38. Because we found that the risk which caused the worker's injury was not "neutral," we also refused to apply the positional risk doctrine in *Burks* v. *Anthony Timberlands, Inc.*, 21 Ark. App. 1, 727 S.W.2d 388 (1987), and *Adkins* v. *Teledyne Exploration Co.*, 8 Ark. App. 342, 652 S.W.2d 55 (1983).

In the case at bar, the evidence showed that on the morning of December 28, 1987, Kathy Kendrick was killed while performing her duties as receptionist at the law firm where she worked. Brenda Jones, who was seated in the waiting room, testified that Kendrick was in another office when Simmons came in. She said that Kendrick approached Simmons without any sign of recognition and asked, "Can I help you?" At that point, Simmons shot Kendrick several times, then turned around, looked directly at Jones, and walked out of the office. Jones said Simmons did not attempt to go into any of the offices of the attorneys in the firm nor did he make any threatening moves toward her (Jones).

It was stipulated that before Simmons came to the law office he had already killed fourteen of his family members, and that after he shot Kendrick, he went to the Taylor Oil Company where he shot his former employer and another man, then to the Sinclair Mini-Mart where he shot a former co-worker, and finally to Woodline Motor Freight where he shot his former supervisor. It was also stipulated that Kendrick and Simmons had previously worked together at Woodline Motor Freight and that Kendrick left her employment with Woodline on March 2, 1987, and Simmons left his employment there on November 19, 1986.

Vicki Lynn Jackson, a friend of Kendrick's who also worked at Woodline, testified that Kendrick and Simmons were acquainted. She said Kendrick confided to her that Simmons kept asking her (Kendrick) to go out with him but that she refused because he was married; that Kendrick said Simmons wrote her notes, followed her, and would sometimes be found sitting on her doorstep; and that Kendrick said she had told Simmons to just "go away."

Jackson also testified that she saw Simmons come into Woodline and shoot his former supervisor, Joyce Butts, and that he then came into the computer room where Jackson was working, held a gun on her and ordered her to call the police. She said he kept the gun on her until he surrendered to the chief of police, but he did not attempt to hurt her. According to Jackson, Simmons told her, "it was all over now, . . . he had gotten everybody that hurt him."

David Eddy, of the appellee law firm, testified that as far as he could determine Simmons had no connection with his law firm or any of its clients. He said none of the attorneys in the firm had ever represented Simmons or were even acquainted with him prior to this incident.

The Commission concluded that the doctrine of positional risk did not apply because the shooting of Kathy Kendrick resulted from a personal vendetta against individuals Simmons felt had harmed him and consequently did not arise out of and in the course of her employment.

■ Appellant argues that the Commission's decision is not supported by substantial evidence. He submits that Ms. Jackson's testimony was not admissible because it was not corroborated, as required by Ark. Code Ann. § 11-9-705(a)(2) (1987), which provides:

> Declarations of a deceased employee concerning the injury in respect of which the investigation or inquiry is being made, or the hearing conducted, may be received in evidence and may, if corroborated by other evidence, be sufficient to establish the injury.

We do not believe this section is applicable to this case because

Ms. Jackson's testimony was not about a deceased employee's statement concerning an injury but about statements of a deceased employee concerning her relationship with Ronald Gene Simmons.

Appellant also contends that Ms. Jackson's testimony is hearsay and was erroneously admitted under Ark. R. Evid. 803(24) since appellant had not been notified of her testimony. Appellee argues that appellant did not object at the hearing to the lack of notice; only that the testimony was hearsay. This exception specifically provides that the statement "may not be admitted . . . unless the proponent of it makes known to the adverse party sufficiently in advance" that the statement will be offered. Thus, it seems clear that without showing that the required notice has been made, the adverse party is required only to object that the testimony is hearsay.

However, even if Jackson's testimony about Kendrick's relationship with Simmons was hearsay and erroneously admitted, we find that when it is completely disregarded, the record contains sufficient evidence to support the Commission's finding that the positional risk doctrine does not apply in this case. It was stipulated that Kendrick and Simmons had worked together and that all but one of the people shot by Simmons were either members of his family or someone he had worked with. (The evidence does not show whether Simmons was acquainted with one of the men shot at Taylor Oil Company.) There is also evidence in the record that Simmons made no attempt to harm several other people who were in close proximity to those killed, and Ms. Jackson testified that while waiting for the police to come get him, "he said that it was all over now, that he had gotten everybody that hurt him." Clearly, the evidence does not show that Kathy Kendrick's death resulted from a "neutral" risk which, as we have discussed, means a risk that is "neither personal" to her nor "distinctly associated" with her employment. Certainly it was not like the gust of wind in the *Parrish Esso Service Center* v. *Adams* case, *supra*, which affected everything in its path, or like a "roving lunatic," referred to by Larson, who would be expected to kill without the selectivity demonstrated by the evidence in this case.

While the appellant also complains that Ms. Jackson

should not have been allowed to testify to the above statement made by Simmons, we disagree. The statement was made within minutes after Simmons had shot at least four people, and we think the statement falls under the hearsay exception of an excited utterance. *See* Ark. R. Evid. 803(2) which provides that "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is an exception to the hearsay rule. Furthermore, the Commission is not bound by technical or statutory rules of evidence. Ark. Code Ann. § 11-9-705(a)(1)(1987). The Commission has broad discretion with reference to admission of evidence and its decision will not be reversed absent a showing of abuse of discretion. *Linthicum* v. *Mar-Bax Shirt Co.*, 23 Ark. App. 26, 741 S.W.2d 275 (1987).

Appellant further complains about the handwritten and transcribed note found in Simmons' safety deposit box which was offered into evidence by the appellee. The only possible relevance the note might have to this case is that on the bottom of one of the pages is printed "T W I M C" with a circle around it, then "Kendrick Kathy Michelle [the next word is scratched out] was a contributing factor." The law judge's opinion states that "no ruling is necessary on the admissibility of this note, and none has been made." (The Commission's opinion does not even mention the point.) Again, the Commission is not bound by the rules of evidence. However, if the note is added to Kendrick's hearsay statements to be disregarded, we think the remaining evidence, considered in the light of the definition of a "neutral" risk, is still sufficient to support the Commission's decision; and we must give the evidence its strongest probative force in favor of the Commission's decision and affirm if that decision is supported by substantial evidence. *Clark* v. *Peabody Testing Service*, 265 Ark. 489, 579 S.W.2d 360 (1979); *Fowler* v. *McHenry*, 22 Ark. App. 196, 737 S.W.2d 663 (1987).

We also point out that while the appellant has relied upon the doctrine of positional risk, there are cases which hold that injuries resulting from an assault are compensable where the assault is causally related to the employment, but not if the assault arises out of purely personal reasons. *See San Antonio Shoes* v. *Beaty*, 28 Ark. App. 201, 771 S.W.2d 802 (1989); *Burks* v. *Anthony Timberlands, Inc.*, 21 Ark. App. 1, 727 S.W.2d 388

(1987). This theory is distinguished from the doctrine of positional risk. *See* 1 Larson, *The Law of Workmen's Compensation* § 11.21(c) (3/90). It is obvious, however, that the evidence in this case would not support a finding that the assault on Kathy Kendrick was causally related to her employment with the appellee law firm. We simply note this in order to explain why we have discussed positional risk only and why the appellant relied only upon that doctrine.

Affirmed.

COOPER and JENNINGS, JJ., agree.