DEFFENBAUGH INDUSTRIES and Travelers
Insurance Company *v.* Earl ANGUS

92-838                                       852 S.W.2d 804

Supreme Court of Arkansas
Opinion delivered May 10, 1993

*Michael E. Ryburn*, for appellants.

*Schieffler Law Firm*, by: *Edward H. Schieffler*, for appellee.

STEELE HAYS, Justice. In this Workers' Compensation case the claimant, Earl Angus (appellee) sustained injuries when a tornado destroyed a mobile home where he resided on the premises of his employer, Deffenbaugh Industries (appellant). The Commission's finding that the injuries were compensable was affirmed by the Court of Appeals by a vote of three to three. In *Deffenbaugh Industries, Inc.* v. *Angus*, 39 Ark. App. 24, 832

S.W.2d 869 (1992) the Court of Appeals adopted the positional risk doctrine to allow compensation for an employee injured by neutral risks. We granted the petition for review of Deffenbaugh and its carrier Traveler's Insurance Company pursuant to our Rule 29(6) because of the tie vote. We affirm and apply the increased risk doctrine in so doing.

Earl Angus was the manager of West Memphis Industrial Oil Services, a subsidiary of Deffenbaugh Industries. Appellants' facility was engaged in the business of collecting and reselling waste oil, operating twenty-four hours per day. Trucks bringing waste oil to the facility arrived at odd hours. The parties stipulated that all of Mr. Angus' duties of employment were required to be performed as needed, twenty-four (24) hours a day, seven (7) days a week.

Earl Angus and his wife entered into a rental agreement with his employer pursuant to which the company purchased a trailer and placed it on the premises of the bulk plant so the family could reside there. This was a condition of his employment. A zoning ordinance of the City of West Memphis prohibited a residence in a commercial area and Angus obtained a zoning variance to permit the mobile home in a commercial zone. Although Angus conducted business from an office in another building, a telephone was installed in the mobile home so that he could be reached by company drivers or customers at any time.

One the night of December 14, 1987, Angus went to the mobile home while awaiting a truck driven by Billy Harris. He had been there approximately fifteen minutes and was eating dinner with his family when a tornado struck the mobile home. Mrs. Angus was killed and Mr. Angus and his daughter were severely injured. Billy Harris arrived several minutes after the storm and discovered the Angus family.

The Workers' Compensation Commission affirmed the Administrative Law Judge's decision that Angus suffered compensable injuries arising from and in the course of his employment. The Commission found that the conditions and obligations imposed upon Angus by his employer required him to maintain a constant presence on the premises and exposed him to the risk of the danger which caused his injury.

The Court of Appeals affirmed the Commission's decision and accepted the positional risk doctrine to provide compensation for employees who are injured by neutral risks but declined to draw a fine distinction between types of risks. The court held that Angus' injuries "arose out of his employment" because "but for" the employment, he would not have been in his home on his employer's premises at the time the tornado struck the area.

On appeal of a worker's compensation case from the Court of Appeals to this court, the evidence must be viewed in the light most favorable to the Commission's decision and its decision must be upheld if it is supported by substantial evidence. *Hall's Cleaners* v. *Wortham*, 311 Ark. 103, 842 S.W.2d 7 (1992). Substantial evidence exists if reasonable minds could have reached the same conclusion. *Wade* v. *Mr. C. Cavenaugh's*, 298 Ark. 363, 768 S.W.2d 521 (1989). Thus, before the appellate court may reverse a decision by the Commission, it must be convinced that fair-minded persons with the same facts before them could not have reached the conclusion arrived at by the Commission. *International Paper Co.* v. *Tuberville*, 302 Ark. 22, 786 S.W.2d 830 (1990); *Howard* v. *Arkansas Power & Light Co.*, 20 Ark. App. 98, 724 S.W.2d 193 (1987).

Thus, the issue now before us is whether there is substantial evidence to support the Commission's finding that Angus sustained injuries "arising out of and in the course of his employment." A claimant seeking benefits must prove by a preponderance of the evidence that the injury arose out of and in the course of the employment. *Arkansas Dep't of Correction* v. *Glover*, 35 Ark. App. 32, 812 S.W.2d 692 (1991). "Arising out of the employment" refers to the origin or cause of the accident while the phrase "in the course of the employment" refers to the time, place, and circumstances under which the injury occurred. *Jones* v. *City of Imboden*, 39 Ark. App. 19, 832 S.W.2d 866 (1992); *Gerber Products* v. *McDonald*, 15 Ark. App. 226, 691 S.W.2d 879 (1985).

The appellants first argue that Mr. Angus was not "in the course and scope" of his employment because he was not performing any job related duties at the time he was injured. Appellants contend that because Angus was eating dinner when the tornado struck, it does not meet the time, place and circum-

stances requirements of being in the course of employment.

■ With respect to course of employment, the test requires that the injury occur within the time and space boundaries of the employment, while the employee is carrying out the employer's purpose or advancing the employer's interests directly or indirectly. *City of El Dorado v. Sartor*, 21 Ark. App. 143, 729 S.W.2d 430 (1987) (citing 1 A Larson, *Workmen's Compensation Law* §§ 14.00, 20.00 (1985)).

■■ In applying the foregoing test, we affirm the Court of Appeals decision that there was substantial evidence that Angus was injured while in the course of his employment. Angus was required to live on the premises as a condition of his employment and was on call twenty-four (24) hours a day, seven days a week. Because he was continuously on duty, Angus qualifies as a resident employee. As such, "the entire period of his presence on the premises is deemed included in the course of employment." *See* 1 A Larson, *Law of Workmen's Compensation* § 24.00 (1992). Appellants obviously benefitted from Angus's accessibility to the plant and the security his presence provided. In addition, Angus was waiting for the Harris truck to arrive and thus the conditions of his employment made it incumbent on him to remain in an area of risk. Therefore, we conclude the conditions of employment and the imminent arrival of the Harris truck demonstrate that Angus was in the course of his employment when he was injured by the tornado.

■ Appellants next argue the injuries did not arise out of the employment because a tornado is an "Act of God" which has no known cause. In order for an injury to arise out of the employment, it must be a natural and probable consequence or incident of the employment and a natural result of one of its risks. *J & G Cabinets* v. *Hennington*, 269 Ark. 789, 600 S.W.2d 916 (Ark. App. 1980).

■ Both parties urge us to apply the positional risk doctrine. Under this theory, an injury is compensable if it would not have happened *but for* the fact that the conditions or obligations of the employment put the claimant in the position where he was injured. 1 A Larson, *Law of Workmen's Compensation*, § 6.00 (1992). This doctrine only applies when the risk is neutral, meaning that the risk which caused the injury was neither

personal to the claimant nor distinctly associated with the employment. *See* 1 Larson, *Law of Workmen's Compensation*, § 6.50 (1992).

■ Although the appellants purport to argue the positional risk doctrine, they suggest that the increased risk doctrine is applicable. Under the latter doctrine, the injuries are compensable if the employment exposed the employee to a greater degree of risk than other members of the general public in the same vicinity.

The Court of Appeals chose to apply the positional risk doctrine, which it refers to as a "substitute for the 'arising out of' test." The court stated that "but for" the employment, Mr. Angus would not have been exposed to injury by neutral risks. Thus, the court classifies tornadoes as neutral risks which are compensable under this doctrine.

Until this decision, Arkansas courts had not expressly adopted the positional risk doctrine, although it has been discussed in such cases as *Adkins* v. *Teledyne Exploration Co.*, 8 Ark. App. 342, 652 S.W.2d 55 (1983); *Burks* v. *Anthony Timberlands, Inc.*, 21 Ark. App. 1, 727 S.W.2d 388 (1987); *Pigg* v. *Auto Shack*, 27 Ark. App. 42, 766 S.W.2d 36 (1989) and *Kendrick* v. *Peel, Eddy, & Gibbons Law Firm*, 32 Ark. App. 29, 795 S.W.2d 365 (1990).

In *Parrish Esso Service Center* v. *Adams*, 237 Ark. 560, 374 S.W.2d 468 (1964), this court applied the increased risk doctrine to compensate a claimant who was injured at work by a gust of wind which picked him up, carried him approximately 75 feet and dropped him on a concrete apron. The claimant was securing a sign outside at the time. The court stated:

> The general rule with respect to injuries and deaths due to tornadoes, hurricanes and other forms of windstorms is, if an employee, by reason of his employment, is exposed to a risk of being injured by storm 'which is greater than the risk to which the public in that vicinity is subject, or if his employment necessarily accentuated the natural hazard from the storm, which increased hazard contributed to the injury,' it is an 'injury arising out of the employment, although unexpected and unusual.' The test

has been said to be 'not whether the injury was caused by an act of God,' but 'whether the one injured was by his employment specially endangered by the act of God.' "

*Parrish*, 237 Ark. at 560.

In *Pigg, supra*, and in the present case, the Court of Appeals has stated that *Parrish* presents the fact situation favorable to the positional risk doctrine. Although an appropriate scenario to the positional risk doctrine may eventually arise, the fact remains that we chose to apply the increased risk doctrine in *Parrish*. We believe that is the appropriate standard to apply in the present case.

The increased risk doctrine is necessary in order to preserve the requirement that a causal connection must exist between the injury and some risk of the employment. Under this theory, the claimant must only prove that the conditions of employment, or the place where his employment required him to be, intensified the risk of injury due to extraordinary natural causes.

In applying the increased risk test to the instant case, we believe that Earl Angus was more at risk than the general public due to the performance of the duties of his job. His employment increased his risk of injury because he was obliged to wait for Billy Harris during the time when a tornado struck the area. He did not have the option to seek safer ground. Moreover, there is advertence in the record to the manifest susceptibility of trailers to tornado damage. Photographs of the scene reflect that the mobile home was wrenched from its moorings and totally destroyed, whereas the evident damage to the structures of the surrounding plant was partially caused by impact with the trailer debris. Clearly, the conditions and obligations of Angus's employment exposed him to higher risk, positioned so that the tornado dealt the injuries he suffered. Therefore, we affirm the Court of Appeals decision that the claimant's injuries arose out of and in the course of his employment.

Affirmed.

CORBIN, J., concurs.

BROWN, J., dissents.

DONALD L. CORBIN, Justice, concurring. I concur. I prefer to apply the positional risk doctrine adopted by the Arkansas Court of Appeals. Thus, applying the positional risk doctrine, Mr. Angus would not have been exposed to injury by the tornado, a neutral risk, "but for" his employment.

ROBERT L. BROWN, Justice, dissenting. The opinion of the majority effectively does away with the requirement that an injury arise out of employment to be compensable. The twin tests for a workers' compensation award are that the injury 1) arise out of employment, and 2) occur in the course of employment. Ark. Code Ann. §§ 11-9-102(4); 11-9-401(a)(1) (1987). The majority correctly concludes that Earl Angus's injury occurred in the course of employment. I cannot agree, however, that his injury, which was caused by a tornado while he was not performing work duties and was eating supper at his home, arose out of his employment.

Angus's mobile home was on the premises of his employer, where he was the manager, but he worked in a separate office. That office was not destroyed by the tornado. He had left his office at 9:15 p.m. to return to his home to have supper. That is what he was doing when the tornado struck. There is no question that he had quit work for this period of time, though he knew that a trucker named Billy Harris would be coming in sometime later that evening:

Q. Was Mr. Harris working that day?

A. Yes, he was loaded that morning. I was in the process of cooking oil that night and I knew Billy wouldn't be in until late, so I went home to eat and wait for Billy to get back in and load him when he got back in that night.

Q. What time was this when you quit?

A. It was about 9:15 when I got home.

Q. And then what happened?

A. I was talking to my wife and I heard some loud pops and noises and I had heard a transformer explode before, the lights were flickering and I heard the roar and everything. I grabbed my wife and my child and we started to get out of the trailer and everything exploded. That is all

I remember.

Q. But, before the tornado demolishing your quarters there, would you have had work to do that night?

A. I had to load Billy when he come back in. The tornado then hit at about 9:30.

Angus testified that normally he went to work at 6:45 in the morning and would be finished at about 7:00 or 8:00 p.m. His typical routine was to go to the house trailer after 7:00 or 8:00 in the evening and then return to his office after supper to turn the alarm system off and perform other duties. When the tornado hit, Angus admitted that he had gone home and was not performing any duties for his employer while he was eating supper with his family:

Q. But you were not performing of (sic) your employment at the time you were in the trailer?

A. Well, not any duties, no, but my work wasn't done until Billy got back in.

Q. So, you might have gone back in the yard to help Billy when he got back in, but as far as what you were doing in the trailer, you testified that all you were doing was eating.

A. Eating dinner.

Q. And you were staying there with your family?

A. Right.

Q. And that is when the tornado hit?

A. Correct.

In sum, we have a neutral risk — the tornado — unrelated to Angus's employment that caused his injury while he ate supper in his home during a period of time when, by his own admission, he was not performing duties for his employer. The fact that a truck would be arriving later that night and that he would have to leave his home and perform some duties does not convert Angus's injury by the tornado into an injury arising out of his employment. He might have been operating in the course of his employment because his mobile home was on his employer's premises and he

was on call, but the injury did not arise out of it.

The majority, accordingly, stretches to reach this result. In my judgment, this court was correct in *Parrish Esso Service Center* v. *Adams*, 237 Ark. 560, 374 S.W.2d 468 (1964), which also involved a wind-related injury. In that case, Adams was employed as a night manager of a service station, and at the time in question he was the only person working on the shift. At about 3:30 a.m., Adams decided to go fasten and secure items on the service station islands. It was while performing these duties that he was injured by a gust of wind. We stated in that case:

> Certainly, there was a duty upon Adams, as an employee, to protect the property of his employer, and the protection that Adams was seeking to afford, could not have been done without leaving the building. The acts being performed were as much a part of his duties as though he had been waiting on a customer when the wind struck. There is absolutely no evidence that Adams was not engaged in the work that he testified to at the time the injury was sustained.

237 Ark. at 568, 374 S.W.2d at 473. Those facts are substantially different from the facts in the present case and exhibit a clear injury arising out of employment. Adams was unquestionably performing work-related duties when he was injured. The same cannot be said in the case before us.

We granted review of this case because of a three-to-three division in the Court of Appeals sitting *en banc*. The evenly divided court amounted to an affirmance of the Workers' Compensation Commission's decision. Did the origin and cause of the injury emanate from Angus's employment? I do not think so. Angus did not perform work-related duties twenty-four hours a day at Deffenbaugh Industries, and he was not working at the time the tornado struck. Indeed, he had left his office and was in his mobile home having supper. The mere fact that he lived on the premises cannot sustain the requirement of work-related causation and this award. Had the tornado injured him when he was in his office or assisting Billy Harris unload his truck, I would have no hesitancy in affirming the award. Here, though, that is not the case. I would reverse the Commission's decision.