Nimisha JIVAN, Deceased *v.* ECONOMY INN & SUITES, and CCMSI

06-1448                                                        260 S.W.3d 260

Supreme Court of Arkansas
Opinion delivered June 28, 2007

---

*Harrelson, Moore & Giles, LLP,* by: *Greg Giles,* for appellant.

*Miachael E. Ryburn,* for appellees.

Jim Gunter, Justice. This appeal arises from a petition for review filed by the statutory beneficiaries of Appellant Nimisha Jivan ("the Jivans") from a decision of the Arkansas Court of Appeals, *Economy Inn & Suites v. Jivan,* 97 Ark. App. 115, 235 S.W.3d 4 (2007) ("*Jivan II*"), which reversed a decision of the Arkansas Workers' Compensation Commission (Commission) and held in favor of Appellants Economy Inn & Suites and CCMSI, its insurance carrier (jointly "Economy Inn"). We granted the Jivans' petition for review, and we affirm the Commission's decision.

Nimisha Jivan, deceased, was an assistant manager at the Economy Inn in Hope, and her husband, Jack Jivan, was a manager. The Jivans lived in a room provided by the hotel and carried out their work responsibilities on the premises. On February 17, 2003, Nimisha, who was off duty, changed her clothes while in the bathroom of her hotel room and prepared to go to the gym. A fire broke out, and Nimisha was not able to escape her hotel room. She died as a result of smoke inhalation.

The Jivans, Nimisha's husband and two minor children, filed a claim with the Commission, seeking to recover the benefits due to them as a result of Nimisha's death. The parties stipulated that Nimisha was employed as an assistant manager for the hotel, and in that capacity, she and her husband were provided with a room in the hotel to live on the premises and to carry out their responsibilities; that on February 17, 2003, a fire occurred at the hotel, causing Nimisha's death; that Nimisha was survived by her husband and her two minor children; that Nimisha was off duty and was in the bathroom of the hotel room changing her clothes to go to a gym to exercise; and that, although she was off duty at the time her death occurred, Nimisha and her husband always were considered on call to address any hotel-related issues. The Jivans' claim

was considered before an administrative law judge ("ALJ"), who entered an order on August 1, 2005, finding that the estate proved by a preponderance of the evidence that Nimisha sustained a compensable injury and that her beneficiaries were entitled to death benefits under Ark. Code Ann. § 11-9-527 (Repl. 2002). Economy Inn appealed to the full Commission, which affirmed and adopted the findings of the ALJ in its order filed on December 27, 2005.

Economy Inn appealed the Commission's decision to the court of appeals. On December 6, 2006, the court of appeals entered an opinion affirming the Commission's decision to award benefits and holding that Nimisha performed employment services at the time of the accident. *See Economy Inn & Suites v. Jivan*, CA06-158 (Ark. App. Dec. 6, 2006) (*"Jivan I"*). However, upon granting Economy Inn's petition for rehearing, the court of appeals issued a substituted opinion, reversing the Commission's decision and remanding for an order consistent with the opinion. *See Jivan II*. In the substituted opinion, the court of appeals held that "fair-minded persons with the same facts before them could not have reached the conclusion that Nimisha was performing employment services at the time of her death." *Id*. On March 20, 2007, after the substituted opinion was issued, the Jivans filed a petition for review, which we granted. In the petition, the Jivans argue that the court of appeals' decision conflicts with this court's precedent, as well as its standard of review. We granted the Jivans' petition for review.

In reviewing decisions from the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Wallace v. West Fraser S., Inc.*, 365 Ark. 68, 225 S.W.3d 361 (2006). Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id*. The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Id*.

The sole issue on appeal is whether Nimisha, at the time of her death, directly or indirectly advanced her employer's interests by performing employment services. In answering this inquiry, we must look to our workers' compensation statutes and applicable case law. Act 796 of 1993 made significant changes in the workers' compensation statutes and in the way workers' compensation

claims are to be resolved. *Wallace, supra* (citing *Pifer v. Single Source Transp.*, 347 Ark. 851, 69 S.W.3d 1 (2002)). Act 796 requires us to strictly construe the workers' compensation statutes. *Id.* The doctrine of strict construction directs us to use the plain meaning of the statutory language. *Id.*

Act 796 defines a compensable injury as "[a]n accidental injury . . . arising out of and *in the course of employment*. . . ." Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2002) (emphasis added). A compensable injury does not include an "[i]njury which was inflicted upon the employee at a time when *employment services* were not being performed." Ark. Code Ann. § 11-9-102(4)(B)(iii) (emphasis added). However, Act 796 does not define the phrase, "in the course of employment," or the term, "employment services." *Wallace, supra* (citing *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997)). It, therefore, falls to this court to define these terms in a manner that neither broadens nor narrows the scope of Act 796 of 1993. *Id.* (citing *Pifer, supra*).

An employee performs "employment services" when he or she is doing something that is generally required by his or her employer. *Wallace, supra* (citing *Collins v. Excel Specialty Prods.*, 347 Ark. 811, 69 S.W.3d 14 (2002)). We use the same test to determine whether an employee was performing "employment services" as we do when determining whether an employee was acting within "the course of employment." *Id.* (citing *Pifer, supra*). The test is whether the injury occurred "within the time and space boundaries of the employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interest directly or indirectly." *Id.* (citing *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 478, 6 S.W.3d 98, 100 (1999)). In order for an injury to arise out of employment, it must be a natural and probable consequence or incident of the employment and a natural result of one of its risks. *Deffenbaugh Indus. v. Angus*, 313 Ark. 100, 852 S.W.2d 804 (1993).

The Jivans cite *Deffenbaugh Industries, supra*, for the proposition that, when one is a residential employee, one's presence on the premises is deemed included in the course of employment. In *Deffenbaugh*, Angus sustained injuries when a tornado destroyed a mobile home where he resided on the premises of his employer, Deffenbaugh. Employing the increased-risk doctrine, we affirmed the court of appeals's decision that, because Angus was required to live on the premises as a condition of his employment and was on

call twenty-four hours a day, seven days a week, there was substantial evidence that Angus was injured while in the course of his employment. *Id.* at 104, 852 S.W.2d at 807. We reasoned that Angus's employment exposed him to further risks because he was required to wait for a truck in a mobile home during a time when a tornado struck the area. *Id.* We further opined that, because he was continuously on duty, Angus qualified as a residential employee, and as such, "the entire period of his presence on the premises is deemed included in the course of employment." *Id.* at 104, 852 S.W.2d at 807 (citing 1A Arthur Larson, *Law of Workmen's Compensation* § 24.00 (1992)). Further, under the doctrine of increased risk, the injuries are compensable if the employment exposed the employee to a greater degree of risk than other members of the general public in the same vicinity. *Deffenbaugh*, 313 Ark. at 105, 852 S.W.2d at 808. Under this theory, the claimant must prove only that the conditions of her employment, or the place where her employment required her to be, intensified the risk of injury "due to extraordinary natural causes."[1] *Id.* at 106, 852 S.W.2d at 808.

We note that Act 796 of 1993 does not preclude the application of the residential-employee rule, which was enunciated in *Deffenbaugh, supra.* Act 796 requires strict construction of our workers' compensation statutes. *Wallace, supra.* However, Act 796 does not define "employment services," and we have stated that any interpretation of a statute by this court subsequently becomes a part of the statute itself. *Morris v. McLemore*, 313 Ark. 53, 55, 852 S.W.2d 135, 136 (1993) (citations omitted). Thus, we abide by our holding in *Deffenbaugh, supra.*

---

[1] The court of appeals relied upon the positional-risk doctrine, rather than the increased-risk doctrine, in *Deffenbaugh Industries v. Angus*, 39 Ark. App. 24, 832 S.W.2d 869 (1992). An injury is deemed to arise out of the employment under the positional-risk doctrine if it is one that would not have occurred but for the fact that the conditions and obligations of the employment placed the employee in the position where the injury occurred. *Kendrick v. Peel, Eddy & Gibbons Law Firm*, 32 Ark. App. 29, 795 S.W.2d 365 (1990). The positional-risk doctrine is implicated in circumstances where an employee is injured by a neutral risk to which she is exposed due to the conditions and obligations of her employment. *Id.* A neutral risk means that the risk which caused the injury was neither personal to the appellant nor distinctly associated with the employment. *Deffenbaugh*, 313 Ark. at 105, 852 S.W.2d at 808. This court has not expressly adopted the positional-risk doctrine.

With this precedent in mind, we turn to the present case to determine whether Nimisha, at the time of her death, directly or indirectly advanced the interests of Economy Inn. Here, the parties stipulated to the following facts:

> c. Nimisha Jivan was employed as the assistant manager for the respondent employer on February 17, 2003, and in this capacity, she and her husband, who was the hotel manager, were provided with a room in the hotel to live on the premises to carry out their responsibilities as employees of the hotel.
>
> d. On February 17, 2003, Mrs. Jivan was off duty and was in the bathroom of the hotel room provided by the respondent changing her clothes to go to a gym to exercise when a fire occurred at the hotel and Mrs. Jivan was not able to escape the fire and died as a result of smoke inhalation.
>
> e. Although Mrs. Jivan was off duty at the time her death occurred, the parties agreed and stipulate that she and her husband were always considered to be on-call to address any hotel related issues, which is at least one of the reasons she and her husband were provided a room in the hotel there on the premises[.]

Based upon these stipulated facts, Nimisha, like Angus in *Deffenbaugh*, resided on the employer's premises at the time of her fatal injury. Employing an increased-risk analysis, Nimisha was expected to reside on the premises and, as a residential employee of the hotel, the condition of living at the hotel "intensified the risk of injury due to extraordinary natural causes." *Deffenbaugh*, 313 Ark. at 106, 852 S.W.2d at 808. That is to say, her presence on the premises during the fire exposed her to a greater degree of risk than someone who did not live on the premises. In fact, the parties stipulated that Nimisha was on call twenty-four hours per day, and while living on the premises, she was to carry out her responsibilities as an assistant manager of the hotel by being available for work duties at all times. Thus, Nimisha indirectly advanced her employer's interests, even while remaining on the premises during the fire.

In its substituted majority opinion, the court of appeals cited *Cook v. ABF Freight Systems, Inc.*, 88 Ark. App. 86, 194 S.W.3d 794 (2004) (holding that a truck driver, who was on call, was not compensated for an injury in a motel room provided by his

employer), for the proposition that an injury is not compensable where an employee performs an activity for the purpose of attending to his personal needs. However, *Cook, supra*, is distinguishable from the present case because the truck driver was not a residential employee of the motel. The driver spent the night in a motel room, which, while paid for by the employer, was neither owned nor operated on the premises of his employer. The scenario might have been different if the truck driver had sustained the injury while sleeping in his truck. *See also Kinnebrew v. Little John's Truck, Inc.*, 66 Ark. App. 90, 989 S.W.2d 541 (1999) (holding that a truck driver's injury from a fall in the shower of a truck stop while off duty was not compensable).

Based upon our well-established standard of review, we follow *Deffenbaugh, supra*, and hold that, under the increased-risk doctrine, Nimisha's fatal injury is compensable as a residential employee who indirectly advanced the interests of her employer. Contrary to the position of the court of appeals' substituted majority opinion, this holding will not extend workers' compensation coverage to include every possible scenario, but rather in a more narrow sense, it will cover those injuries, particularly those from extraordinary natural causes, that residential employees sustain on their employers' premises. Accordingly, the Commission's decision is affirmed.

Workers' Compensation Commission affirmed; court of appeals reversed.