## Leslie TOIA *v.* HTI LOGISTICS, Employer

CA 07-234                                                    268 S.W.3d 334

### Court of Appeals of Arkansas
### Opinion delivered November 14, 2007

*Richard Whiffen, P.C.*, by: *Richard Whiffen*, for appellant.

*John Barttelt*, for appellee.

ROBERT J. GLADWIN, Judge. This appeal follows the December 13, 2006 decision of the Workers' Compensation Commission (Commission) that reversed the June 29, 2006 opinion of the Administrative Law Judge (ALJ), finding specifically that appellant Leslie Toia failed to prove by a preponderance of the evidence that he was performing employment services at the time his injuries occurred. On appeal, appellant challenges the Commission's decision on that single issue. We reverse and remand for an award of benefits.

Appellant picked up a load of newsprint in Pine Bluff, Arkansas, and was scheduled to deliver it in Burlington, Vermont, on May 10, 2002. He arrived in Burlington on May 9, 2002, and proceeded to his drop-off location. After he was informed that he would have to wait until the following morning to unload, he parked his truck at a local shopping mall. According to appellant, sometime after he parked the truck he left to get something to eat.

Appellant testified that he subsequently returned to his truck intending to retire for the night in the sleeper compartment of the truck. He checked the seals on the truck and walked around, generally checking the truck itself, then proceeded to climb back in the truck for the evening.

Appellant lost his footing while climbing up into the cab of his truck, slipped off the top step, fell backwards onto the ground, and landed on his back. He stated that he lay helpless on the ground for about forty-five minutes, with no one stopping to help, before finally being able to get back up and into the cab of his truck. Appellant stated that he rested there for about an hour or two, then disconnected the trailer, and eventually drove himself to the emergency room of a nearby hospital. Appellant testified that he was examined at the emergency room but that no x-rays were taken. He further testified that he was released with pain medication and ibuprofen.

Appellant delivered his load the next morning as scheduled, then contacted Tim Hogan, appellee's dispatcher, to notify appellee of his injury. He stated that he was told that he would have to return to Jonesboro, Arkansas, for further medical treatment. First, however, he was instructed to pick up a load approximately 300 miles away in up-state New York. Appellant eventually arrived at his destination in New York, where he again sought treatment at the emergency room of a local hospital. Appellant testified that surgery was recommended at that time, which he refused because he preferred being treated in his home state of Montana. He then flew home to Montana where he was examined by a neurosurgeon, who allegedly performed surgery the same day. There are no medical records to corroborate appellant's version of events surrounding his alleged injury. Appellant stated that, after two months of recovery time from this surgery, he returned to work for appellee. He left his employment with appellee approximately four to five months later for a higher-paying position with another trucking company.

Appellant admitted during the hearing before the ALJ on May 5, 2006, that he had given false statements during his July 6, 2005 deposition. These false statements related primarily to the times at which events occurred on the date in question. Appellant explained that he had been untruthful because he had corrected his Department of Transportation (DOT) logs, to which he had referred during his deposition, in order to avoid violations. Appellant further explained that he had been reprimanded on numer-

ous occasions for violating DOT regulations in reporting. Notwithstanding these admitted indiscretions, both the ALJ and the Commission found that the preponderance of the credible evidence demonstrated that appellant was an employee of appellee at the time of his alleged accident. Appellant's employment status is not at issue for purposes of this appeal.

Appellant also admitted that he had three beers with his meal but denied being intoxicated at the time this incident allegedly occurred. There is no toxicology report contained within the record to verify appellant's level of blood alcohol at the time of this incident. Although aware of those admissions, the Commission did not appear to focus on that issue, specifically pursuant to the provisions of Ark. Code Ann. § 11-9-102(4)(B)(iv)(a) (Repl. 2002), when making findings regarding compensability.

With regard to the issue of employment services, as previously mentioned, appellant was less than candid during his deposition regarding: the time he arrived in Burlington; his activities immediately following his arrival there; his activities immediately prior to his alleged accident; the time the accident occurred. Although he admitted that he had essentially lied during his deposition about the chronology of events on May 9, 2002, it appears from his testimony at the hearing before the ALJ that he most likely did sustain a legitimate injury on that date. The Commission stated in its opinion that the truth appeared to be that appellant was returning to his truck after taking a dinner break, with plans to sleep there before delivering his load the next morning. The Commission also set forth in its opinion that appellant mis-stepped while he was climbing into the cab of his truck, and landed on the ground. Therefore, the only remaining issue to be resolved is whether appellant was performing employment services at the time of his alleged accident.

### Standard of Review

In appeals involving claims for workers' compensation, our court views the evidence in a light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Moncus v. Billingsley Logging*, 366 Ark. 383, 235 S.W.3d 877 (2006). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court

must affirm the decision. *Id.* Where the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Id.*

It is well settled that questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *See Mize v. Resource Power, Inc.,* 99 Ark. App. 415, 261 S.W.3d 477 (2007). Arkansas Code Annotated section 11-9-704(b)(6)(A) (Repl. 2002) vests with the Commission the duty to review the evidence and if deemed advisable to hear the parties, their representatives, and witnesses. The statute further requires the Commission to determine, on the basis of the record as a whole, whether the party having the burden of proof on the issue has established it by a preponderance of the evidence. Ark. Code Ann. § 11-9-704(c)(2). Thus, in determining that the Commission's authority and duty to conduct a de novo review of the entire record, including issues of credibility, are constitutional, this court stated in *Stiger v. State Line Tire Serv.,* 72 Ark. App. 250, 261, 35 S.W.3d 335, 342 (2000):

> When the Commission reviews a cold record, demeanor is merely one factor to be considered in credibility determinations. Numerous other factors must be included in the Commission's analysis of a case and reaching its decision, including the plausibility of the witness's testimony, the consistency of the witness's testimony with the other evidence and testimony, the interest of the witness in the outcome of the case, and the witness's bias, prejudice, or motives. The flexibility permitted the Commission adequately protects the claimant's right of due process of law.

Accordingly, when there are contradictions in the evidence, it is constitutionally within the Commission's exclusive province to reconcile the conflicting evidence and to determine the true facts. In addition, the Commission is not required to believe the testimony of the claimant or other witnesses, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Cottage Café, Inc. v. Collette,* 94 Ark. App. 72, 226 S.W.3d 27 (2006).

A compensable injury is "an accidental injury . . . . arising out of and in the course of employment." Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2002). A compensable injury does not

include injuries suffered at a time when employment services were not being performed. Ark. Code Ann. § 11-9-102(4)(B)(iii). An employee is performing "employment services" when he or she is doing something that is generally required by his or her employer. *White v. Georgia-Pacific Corp.*, 339 Ark 474, 6 S.W.3d 98 (1999). The same test is used to determine whether an employee was performing "employment services" as when determining whether an employee was acting within "the course of employment." *Moncus, supra.* The supreme court has stated that an employee is performing employment services when he is doing something that is generally required by his employer. *Id.* The test is whether the injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly. *White, supra.* Furthermore, when the injury occurs outside of the time and space boundaries of employment, the critical determination to be made is whether the employee was directly or indirectly advancing the interests of the employer at the time of the injury. *Moncus, supra.*

Whether a claimant was performing employment services depends on the particular facts and circumstances of each case. The following factors may be considered in determining whether the claimant's conduct falls within the meaning of "employment services": (1) whether the accident occurs at a time, place, or under circumstances that facilitate or advance the employer's interests; (2) whether the accident occurs when the employee is engaged in activity necessarily required in order to perform work; (3) whether the activity engaged in when the accident occurs is an unexpected part of the employment; (4) whether the activity constitutes an interruption or departure, known by or permitted by the employer, either temporally or spatially from work activities; (5) whether the employee is compensated during the time that the activity occurs; (6) whether the employer expects the worker to stop or return from permitted non-work activity in order to advance some employment objective. *See Matlock v. Ark. Blue Cross Blue Shield,* 74 Ark. App. 322, 49 S.W.3d 126 (2001).

### Discussion

Appellant contends that, because he was returning to the truck to sleep, he was advancing the employer's interests by insuring the safety of the truck. It is undisputed that in the present case, appellee required employees to maintain control of their

trucks and to make sure the contents of the truck and the truck itself were safely secured. Both appellant and Ms. Jodie Israel, the former payroll and personnel employee for appellee, testified that appellant would be required to secure his vehicle and the contents therein. Appellant also testified that there were facilities in the truck that were designed to allow drivers to sleep on board. More importantly, appellant testified that employees would rarely stay in a motel room unless they were on a two-day layover. Appellant was not on a two-day layover, and he argued that he saved appellee money by staying in the truck.

Appellant also contends that he provided security by staying in the truck. Appellant specifically testified that there were benefits to staying in the truck, including that it prevented theft. When asked why he would spend the night in the truck, he answered, "[b]ecause if anything's going to happen to your trailer you can feel it rocking. I mean, as soon as you open the door, actually physically lift the handles and pull it open and when you feel the doors open you can actually feel the vibration right through the whole truck." Appellant testified that, one time in the past when he was in New York, someone was attempting to break in his truck while he was sleeping and that he felt the vibrations and got out of bed. He started the truck and went around back, at which time he found that the trailer door was open. He argues that by sleeping in the truck he was able to stop what was apparently an attempted robbery, which would clearly benefit appellee.

Appellant cites *Jivan v. Economy Inn & Suites*, 97 Ark. App. 115, 253 S.W.3d 4 (2006), as paralleling the facts of this case. There, the claimant was the estate of Nimisha Jivan, deceased, who was an assistant manager at the Economy Inn in Hope, Arkansas, and whose husband, Jack Jivan, was a manager. The Jivans lived in a room provided by the hotel and carried out their work responsibilities on the premises. On February 17, 2003, Nimisha, who was off duty, was changing her clothes while in the bathroom of her hotel room preparing to go to the gym. A fire broke out, and Nimisha was not able to escape her hotel room. She died as a result of smoke inhalation from the fire.

In its opinion reversing this court's decision to deny benefits, our supreme court discussed the fact that Nimisha, like the claimant in *Deffenbaugh Industries v. Angus*, 313 Ark. 100, 852 S.W.2d 804 (1993), resided on the employer's premises at the time of her fatal injury. *Jivan v. Economy Inn & Suites*, 370 Ark. 414, 260 S.W.3d 281 (2007). The supreme court employed an increased-

risk analysis, discussing that Nimisha was expected to reside on the premises and, as a residential employee of the hotel, the condition of living at the hotel "intensified the risk of injury due to extraordinary natural causes." *See Deffenbaugh*, 313 Ark. at 106, 852 S.W.2d at 808. The supreme court stated that her presence on the premises during the fire exposed her to a greater degree of risk than someone who did not live on the premises. The parties had stipulated that Nimisha was on call twenty-four hours per day, and while on the premises, she was to carry out her responsibilities as an assistant manager of the hotel by being available for work duties at all times. Accordingly, the supreme court held that Nimisha indirectly advanced her employer's interests.

In *Jivan*, the supreme court pointed out that in our supplemental majority opinion, this court cited *Cook v. ABF Freight Systems, Inc.*, 88 Ark. App. 86, 194 S.W.3d 794 (2004) (holding that a truck driver, who was on call, was not compensated for an injury in a motel room provided by his employer), for the proposition that an injury is not compensable where an employee performs an activity for the purpose of attending to his personal needs. The supreme court found *Cook* to be distinguishable from the *Jivan* case because the truck driver was not a residential employee of the motel. The driver spent the night in a motel room, which, while paid for by the employer, was neither owned nor operated on the premises of his employer. However, the supreme court *specifically* stated that "[t]he scenario might have been different if the truck driver had sustained the injury while sleeping in his truck." *Jivan*, 370 Ark. at 420, 260 S.W.3d at 286. That is exactly the situation that occurred in the instant case.

The supreme court held that, under the increased-risk doctrine, Nimisha's fatal injury was compensable as a residential employee who indirectly advanced the interests of her employer. Appellant points out that the claimant in *Jivan* was getting ready to leave her employment location at the time of her accident, yet the injuries were found to be compensable. Here, appellant was doing just the opposite. When he walked around the truck to make certain that it and the contents were secure and proceeded to climb back into the truck to retire for the evening, appellant had returned to the "premises" of his employment. He was remaining in the truck, his mobile "office" so to speak, in order to prevent anything from happening to it or its contents prior to delivery to the customer the following morning.

Appellant also cites *Arkansas Department of Health v. Huntley*, 12 Ark. App. 287, 675 S.W.2d 845 (1984), where this court held that activities of a personal nature, that are not forbidden but reasonably expected, may be a material incident of employment and injuries suffered in the course of such activities are compensable. The court stated that the controlling issue is whether the activity is one to be reasonably expected so as to be an incident of the employment and thus in essence a part of it. *Id.* In the instant case, appellant climbing into his truck is an activity that the employer should reasonably expect and is an incident of his employment. There are many activities directly related to his employment that require him to get into and out of the truck, including, but not limited to, loading and unloading, pumping gas, talking to customers upon pick-up or delivery, etc. Here, he was climbing into the truck after checking the seals and inspecting the truck itself in order to save appellee money on lodging while also keeping his vehicle and the contents therein secure.

Appellee focuses on the lack of factual information known about the injury and the inconsistencies between appellant's testimony at each of his two depositions and at the hearing, reminding us that appellant has the burden of proving by a preponderance of the evidence that his injury is compensable. Appellee urges this court to decide this case based on the principles of *Ray v. University of Arkansas*, 66 Ark. App. 177, 990 S.W.2d 558 (1999), where a food-service worker was entitled to benefits for an injury that she sustained while she was on break. The determining factors regarding whether she was performing employment duties at the time of the accident were that her breaks were paid and she was required to assist diners, even during her break, should the need arise.

Appellee maintains that in the instant case, appellant was not performing employment services either before, after, or during the injury. Appellee contends that he was not required to perform employment services until 8:00 a.m. the following morning, when he was to deliver the load. Appellee asserts that it could not benefit from appellant's personal activities such as shopping, eating, beer drinking, or going to the movies. *Kinnebrew v. Little John's Truck, Inc.*, 66 Ark. App. 90, 989 S.W.2d 541 (1999), is also cited as an example of this court holding that a truck driver was not performing employment services when he was injured while taking a shower at a truck stop. As previously discussed, *Kinnebrew* is distinguishable because appellant's activities at the time of the

injury are much more closely tied to the truck, its contents, and appellant's responsibility to make sure nothing happened to either one prior to delivery.

The Commission found that appellant was off duty and free to do as he as he pleased at the time of the alleged incident. There was contradictory testimony about appellant's reporting of the accident, his initial handling of obtaining medical treatment, a potential delay in giving notice of the claim, the lack of medical records substantiating the injury, and his status as an employee. The Commission did not focus on those issues, however, focusing solely on whether appellant was performing employment services at the time of the injury.

Limiting our review to that one issue, under the analysis recently set forth in *Jivan*, we hold that reasonable minds could not reach the result found by the Commission because appellant's activities related to returning to the "premises," *i.e.*, his truck, in preparation of staying overnight in the truck to protect it and the cargo, advanced the interests of his employer. Despite the allegations of falsified statements, DOT records, and lack of credibility, even the Commission stated in its opinion that appellant was engaged in activities related to his truck at the time he fell. Accordingly, we reverse and remand for an award of benefits.

Reversed and remanded.

HART and GLOVER, JJ., agree.

MILLER, J., concurs.

BIRD and HEFFLEY, JJ., dissent.

BRIAN S. MILLER, Judge, concurring. I concur with the decision to reverse and remand this case for an award of benefits; and I write separately to reconcile this view with my position in *Economy Inn & Suites v. Jivan*, 97 Ark. App. 115, 253 S.W.3d 4 (2007). In *Jivan*, I voted with this court's majority to deny benefits based on my view that the claimant was not advancing the interests of her employer while changing clothes to attend a work-out session. The supreme court, however, reversed us in *Jivan v. Economy Inn & Suites*, 370 Ark. 414, 260 S.W.3d 281 (2007).

The majority opinion clearly articulates the similarities between *Jivan* and the present case. Although it is arguable that the claimant, Leslie Toia, was not advancing the interests of his

employer at the time of his injury, we are bound by the precedent of our supreme court. *See Sanderson v. McCollum*, 82 Ark. App. 111, 112 S.W.3d 363 (2003); *Gause v. Shelter Gen. Ins.*, 81 Ark. App. 133, 98 S.W.3d 854 (2003). Therefore, I join the majority.

S AM BIRD, Judge, dissenting. This court has reversed the Commission's opinion, which found that appellant was not performing employment services at the time he was allegedly injured and, therefore, denied him benefits. I respectfully dissent because I believe that there is substantial evidence to support the Commission's denial of benefits.

A recitation of our standard of review is critical to my opinion in this case. We review the evidence in a light most favorable to the Commission's decision and affirm the decision if it is supported by substantial evidence. *Moncus v. Billingsley Logging*, 366 Ark. 383, 235 S.W.3d 877 (2006). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether we might have reached a different result from the Commission; unless we conclude that reasonable minds could not reach the conclusion reached by the Commission, we are required to affirm its decision. *Id.* In this case, the Commission specifically found that appellant was off-duty at the time of the alleged injury and that he failed to prove by a preponderance of the evidence that he was performing employment services. In my view, the Commission's decision is supported by substantial evidence and should be affirmed.

In support of its decision to reverse the Commission's determination, the majority relies upon appellant's testimony that employees rarely stayed in a motel unless they were on a two-day layover; that he saved money by staying in his truck; and that staying in the truck benefitted his employer by providing security. The majority then compared the facts of this case to the facts in *Jivan v. Economy Inn & Suites*, 370 Ark. 414, 260 S.W.3d 281 (2007), in which the supreme court affirmed an award of benefits for the family of Nimisha Jivan, the assistant manager of a hotel, who died in a fire at the hotel while she was off-duty but while she was changing her clothes in the bathroom of her hotel room. In *Jivan*, the supreme court relied on the parties' stipulation that Mrs. Jivan was required to live at the hotel and was always considered to be on-call to address any hotel-related issues. The court held that Mrs. Jivan's injury was compensable as a residential employee who indirectly advanced the interests of her employer. However, the

court noted that its holding would "not extend workers' compensation coverage to include every possible scenario, but rather in a more narrow sense, it will cover those injuries, particularly those from extraordinary natural causes, that *residential employees* sustain on their *employers' premises." Id.* at 420, 260 S.W.3d at 286 (emphasis added).

I disagree with the majority that the holding in *Jivan* requires reversal of the Commission's decision in this case. The facts in this case are significantly different from the facts that were critical to the court's decision in *Jivan.* Appellant was not a residential employee and did not sustain an injury on his employer's premises. In attempting to compare this case to *Jivan,* the majority refers to appellant's truck as the "premises" and as his "mobile office." In fact, to use the supreme court's analysis in *Jivan,* we must assume that appellant's truck is the employer's "premises." It is only when an employee resides on the employer's property that he is in fact a residential employee. Residence means "the place, esp. the house, in which a person lives or resides; dwelling place; home." *Webster's College Dictionary* 1145 (1996). A company vehicle — even one with a sleeping compartment — is not a residence. In fact, appellant testified that he "resided" in Billings, Montana. Unless we are going to extend the definition of a residential employee from those employees required to live on the jobsite and remain on-call twenty-four hours per day to truck drivers, or any other employee who spends a significant amount of time in a vehicle owned by his or her employer, appellant was not a residential employee.

The question in this case is whether there is substantial evidence to support the Commission's decision that an off-duty truck driver, who injured himself while allegedly attempting to climb into his company-owned truck to sleep, was not performing employment services. The Commission found that the credible testimony demonstrated that appellant was off duty at the time he slipped and fell. It also found that he was not returning to his truck to perform any work-related activity, but to sleep. The Commission found that appellant was "free to do as he pleased" at the time of the incident and the fact that he chose to sleep in his truck did not imply that he was advancing his employer's interests, either directly or indirectly, by doing so. There was no testimony by appellant or anyone else that appellant was required to sleep in his truck. In fact, he testified that sometimes he would get a motel room and "sometimes" he needed permission to get a motel room

and "sometimes" he did not need permission. This testimony certainly did not establish that appellant was required by his employer to sleep in his truck.

The Commission also found that, even if inspecting the truck rose to the level of employment services, appellant had completed the inspection before he decided to climb into the truck to retire for the evening. The Commission stated that the completed inspection did not transform his decision to retire for the evening into an employment activity. I believe that reasonable minds could accept this evidence as adequate to support the Commission's decision.

The Commission found that appellant was off-duty. Where he chose to spend his off-duty time — in his truck — does not change this critical fact. Because he was off-duty when he was allegedly injured, the Commission determined that he was not performing employment services. We have affirmed the Commission's denial of benefits for a truck driver who was injured in the bathroom while "on-call" in a hotel room provided by his employer. *Cook v. ABF Freight Sys., Inc.*, 88 Ark. App. 86, 194 S.W.3d 794 (2004). We also affirmed the denial of benefits for a truck driver who was injured while showering in a truck stop during his required eight-hour break between deliveries. *Kinnebrew v. Little John's Truck, Inc.*, 66 Ark. App. 90, 989 S.W.2d 541 (1999). Like the appellant in this case, these truck drivers were off-duty. One was in the bathroom of a hotel room provided by his employer and one was in a truck-stop shower; appellant was getting into his truck to sleep. However, all were off-duty and free to do as they pleased.

It is the function of the Commission to determine the credibility of the witnesses and the weight to be given their testimony. *Cooper Tire & Rubber Co. v. Angell*, 75 Ark. App. 325, 58 S.W.3d 396 (2001). The Commission did not believe appellant's testimony that, by getting into his truck to sleep, he was performing employment services. While acknowledging the proper standard of review, the majority nonetheless ignores it, disregards the Commission's conclusion, and concludes instead that appellant was injured while getting into his "premises" to sleep. Although there may be a case in which a truck driver should be compensated for an injury received while sleeping in his truck, I do not believe that this is that case. There was no evidence that appellant's employer either required or requested that appellant sleep, eat, or otherwise remain in his truck during his free time. Appellant chose

to go out to a restaurant, eat a steak, and drink some beers; he then chose to return to his truck to sleep. In my view, there is substantial evidence to support the Commission's decision that appellant was not performing employment services at the time of the incident because he was off-duty and was, therefore, "free to do as he pleased." Therefore, I would affirm.

HEFFLEY, J., joins this dissent.